Jerome **FEINSTEIN**, Plaintiff,

v.

**MASSACHUSETTS GENERAL HOSPITAL**, Defendant.

**Civ. A. No. 79–750–S.**

United States District Court, D. Massachusetts.

Oct. 11, 1979.

Albert E. Grady, Brockton, Mass., for plaintiff.

Clement McCarthy, Raymond J. Kenney, Jr., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

Plaintiff, a citizen of Rhode Island, commenced this action in April 1979 to recover for personal injuries allegedly caused by the negligence of the defendant, Massachusetts General Hospital. Jurisdiction in this court was based on diversity of citizenship, 28 U.S.C. § 1332.

Defendant has moved to refer the matter for a hearing before a medical malpractice tribunal pursuant to Mass.Gen.Laws, c. 231, § 60B, which requires every action for malpractice commenced after January 1, 1976 to be screened by the statutory tribunal. Defendant maintains that this statute constitutes a substantive rule of law that must be applied in a federal diversity action. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff opposes the motion on the grounds that such a referral would defeat the purposes of diversity jurisdiction, relying on the carefully reasoned opinion of Judge Pettine in *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R. I.1978), in which a similar state law was not deemed controlling in federal court.

The state statutory procedure to screen malpractice claims was enacted in 1975 as "part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost." *Paro v. Longwood Hospital,* 373 Mass. 645, 369 N.E.2d 985, 987 (1977). Section 60B provides that "every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice in the commonwealth . . . ." The justice selects both the other members of the panel. Although the language of the act might suggest that appearance before such a tribunal was a condition precedent to filing suit in state court, the further statutory stipulation that "[every] such action for malpractice shall be heard by said tribunal within fifteen days after the defendant's answer has been filed" contemplates that suit first be filed in state court prior to referral of the matter to the tribunal. *See Austin v. Boston University Hospital,* 372 Mass. 654, 363 N.E.2d 515, 518 (1977).

At the tribunal hearing, "the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." The act offers examples of admissible evidence, and empowers the tribunal to subpoena witnesses. If a finding is made for the defendant, plaintiff, in order to pursue the claim in court, must post a $2,000 bond with the Clerk of the Court in which the case is pending. A failure to do so within thirty days of the tribunal's finding will result in a dismissal of the action. Both the decision of the tribunal and witnesses' testimony are deemed admissible as evidence at trial. The expenses and compensation of the tribunal are borne by the Commonwealth of Massachusetts.

Several federal courts have recently dealt with the phenomena of state malpractice tribunals and their application in federal

diversity actions. With the sole exception of *Wheeler v. Shoemaker, supra,* the courts have unanimously held the state statutory requirements to be based on substantive state policy and therefore applicable under *Erie* in federal court. This result would seem to comport with the Supreme Court's interest in the "discouragement of forum-shopping and avoidance of inequitable administration of the laws," *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965), as the screening mechanism would be mandatory in both federal and state courts. *Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1168–9 (5th Cir. 1979); *Hines v. Elkhart General Hospital,* 465 F.Supp. 421, 424–5 (N.D.Ind.1979); *Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F.Supp. 778, 780–1 (D.Md.1978); *Flotemersch v. Bedford County General Hospital,* 69 F.R.D. 556 (E.D.Tenn.1975). These cases, however, were all decided on motions to dismiss, for the relevant statutes required a claimant to proceed before a panel prior to bringing an action in court, thus making satisfaction of the state requirement a condition precedent to a court's jurisdiction. A state-mandated referral to a panel after an action is filed, as in the present case and in *Wheeler v. Shoemaker, supra,* clearly differs from the state statutory schemes considered in the cases cited above. *Woods v. Holy Cross Hospital, supra* at 1169 n.7.

The critical factor in *Wheeler v. Shoemaker, supra,* was the characterization of the panel proceedings as a full-blown trial, "likely to be the decisive battle between the litigants." *Id.* at 222. The Rhode Island tribunal conducts an evidentiary hearing, in accordance with the same rules of evidence and civil procedure that govern in Superior Court, and ultimately issues a written majority opinion stating the grounds for its conclusion and, upon a finding of liability, the amount of damages. If no action is taken by either party within thirty days, the findings are deemed accepted. The panel's findings with respect to liability are admissible at trial, and the party rejecting the findings may be ordered to pay all costs of the subsequent action.

The court found that the statutory panel proceedings functioned as an "adjunct" of the state court. Reference to a panel appointed by the state court was thereby "tantamount to vesting original jurisdiction in state court and would defeat the purpose of the Congressional grant of diversity jurisdiction." *Id.* at 222. In addition, the panel proceedings, although substantive in nature, would alter the role of the jury in the federal system, for the screening device implied a lack of faith in the jury's ability to fairly decide liability and damages. Applying *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the court found the panel's usurpation of the jury's role to be inconsistent with federal policy interests, as well as imposing an additional unwarranted expense and inconvenience were the federal court to appoint its own panel, mimicking state procedure. For all those reasons, the court chose not to apply state law.

The Massachusetts statute before me requires a far less formal hearing, during which the plaintiff must simply make an "offer of proof." The panel reaches no decision as to liability or damages; in fact, unlike *Wheeler,* no untoward consequences will attach if the defendant fails to appear. As opposed to a "decisive battle" over the claim, this procedure merely provides a screening device to discourage frivolous claims. Thus, federal court original jurisdiction and the jury's role, protected by Judge Pettine in *Wheeler,* are not threatened by the Massachusetts malpractice tribunal statute. This case more clearly parallels the state statutory bond requirement for shareholder derivative actions applied in federal court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). As state substantive policy will be served by utilizing the state malpractice tribunal procedure and forum-shopping will be discouraged, I find that the Massachusetts statute imposes substantive requirements to be applied in federal court under *Erie* and *Hanna v. Plumer, supra.* Accordingly, defendant's motion to refer the present action to the Superior Court for a § 60B hearing is ALLOWED.