Sharon H. REICHELDERFER, Conservator of the Estate of Donald M. Reichelderfer, Jr., and Sharon H. Reichelderfer as Parent and Natural Guardian of Roxanne Reichelderfer and Sharon H. Reichelderfer, Individually, Plaintiff,

v.

ILLINOIS CENTRAL GULF RAILROAD, Defendant/Third-Party Plaintiff,

v.

E. D. LAVENDER, d/b/a Lambert-Marks Express; Owen B. Tabor, M. D.; Jesse G. Mullen, M. D.; Methodist Hospital, a nonprofit corporation; and Whitehaven Anesthesia Group, P. C., Third-Party Defendants.

No. DC 78-93-K-P.

United States District Court, N. D. Mississippi, Delta Division.

April 10, 1981.

John L. Low, IV and William F. Goodman, Jr., Jackson, Miss., for Illinois Cent. R. R.

S. T. Rayburn and Will A. Hickman, Oxford, Miss., for Dr. Owen Tabor.

John J. Thomason, Memphis, Tenn., for Whitehaven Anesthesia Group.

John Roach, Jackson, Miss., for Lavender.

## MEMORANDUM ORDER

KEADY, Chief Judge.

The court has for disposition the motions of the third-party defendants, Dr. Owen Tabor, Dr. Jesse G. Mullen, and Whitehaven Anesthesia Group, P.C. (Memphis defendants), to refer the action to the Tennessee Medical Malpractice Review Board pursuant to Tenn.Code Ann. (TCA) § 23–3401 et seq. The third-party plaintiff, Illinois Central Gulf Railroad (ICG), asserting to be the holder of substantial claims for indemnity against the Memphis defendants, has filed a second amended third-party complaint against the parties seeking the recovery of $1,950,000 as a result of alleged medical malpractice committed by the Memphis defendants on or about November 22, 1976. A brief recitation of the history of this case will be helpful in understanding the issues involved in the present motions.

On October 12, 1976, a train owned and operated by ICG had a crossing collision with a truck at Marks, Mississippi, and Donald M. Reichelderfer, Jr., an employee of ICG performing duties of his employment on the locomotive involved in the collision, sustained injuries to his lower extremities. Reichelderfer was initially treated by Dr. Jack Sartin of Clarksdale, Mississippi; and the injured plaintiff was referred to the defendant Dr. Tabor, an orthopedic specialist, for further treatment of accidental injuries. On November 22, 1976, Reichelderfer submitted to a medical procedure performed in the Methodist South Hospital at

Memphis, in which Dr. Tabor was the attending physician, Dr. Mullen, anesthesiologist, and a nurse anesthetist employed by Whitehaven Anesthesia Group acting in the course of her employment. ICG alleges that Reichelderfer developed hypoxia, which led to cardiac arrest, and the medical treatment of the Memphis defendants, including Dr. Tabor, Dr. Mullen and the nurse anesthetist, constituted medical malpractice, resulting in Reichelderfer sustaining permanent brain damage and being rendered in a comatose condition which has continued to this date. Sharon H. Reichelderfer, wife and conservator and guardian of Roxanne Marie Reichelderfer, minor child of the injured employee, originally brought suit in the United States District Court for the Northern District of Mississippi, Cause No. DC 78–93–WK–P, against ICG seeking substantial damages because of negligence on the part of ICG as a FELA employer, which proximately caused or contributed to the truck-train collision. Later plaintiff's suit was amended to bring in E. D. Lavender, d/b/a Lambert-Marks Express, truck owner, and later Larry E. Mills, the truck driver, charging said parties with joint and concurring negligence. ICG, denying charges of negligence, nevertheless filed a third-party complaint against the Memphis defendants, who moved to dismiss for lack of in personam jurisdiction. This motion was denied on October 20, 1978, on the ground that the Memphis defendants were personally served within 100 miles of Clarksdale, Mississippi, the place where the action was pending, and were subject to personal process, although citizens of Tennessee, because of the 100 mile "bulge" provision of Rule 4(f), F.R.Civ.P. At a later date the Reichelderfer plaintiffs attempted to amend their complaint to also join the Memphis defendants, which action was denied by the court. The court also ordered separate trial of ICG's third-party claim against the Memphis defendants after the conclusion of the original suit instituted by the Reichelderfer plaintiffs. Thereafter, ICG made demand for indemnity for any damages imposed upon it as the result of the alleged negligence of the Memphis defendants. After this demand was rejected, ICG proceeded to settle and compromise plaintiff's claim against it. The terms of the compromise were made known to the Memphis defendants who failed to object to its terms and refused to participate or join in the consummation of the settlement. The terms of the ICG settlement to its injured FELA employee were as follows:

| | |
|---|---:|
| Lump sum payment to injured plaintiff | $650,000.00 |
| Purchase of annuity insurance contract | 783,993.00 |
| Medical payments which ICG was required by operation of law to expend | 287,188.94 |
| Total | $1,721,181.94 |

In subsequent proceedings by the Reichelderfers against Mills and his employer Lavender, in which ICG joined seeking partial indemnification against Mills and Lavender, an additional settlement of $450,000 was made by Mills on his behalf and on behalf of his employer, Lavender. A term of this settlement was the assignment to ICG of all rights of action held by Lavender and Mills, as well as by the Reichelderfer claimants. ICG, in its counterclaim seeking indemnity, alleges that it and the Memphis defendants were jointly liable to the Reichelderfer claimants for the brain damage sustained by Donald M. Reichelderfer, Jr., on November 22, 1976, and that ICG, alleging that it was guilty of no active negligence, is entitled to indemnification from the Memphis defendants for that proportion of the damages consisting of the subsequent brain injury sustained by Reichelderfer or in the alternative that it is entitled to contribution from the Memphis defendants.

The Memphis defendants assert various defenses, including this court's lack of jurisdiction because of the failure to comply with the provisions of the Tennessee Medical Malpractice Review Board and Claims Act. The present motions supportive of that defense seek to have the third-party action referred to the Tennessee Medical Malpractice Review Board in accordance with TCA § 23–3403.

Tennessee first adopted a Medical Malpractice Review Act in 1975 providing that upon the filing of a medical malpractice action in any court and the case is at issue in accordance with the rules of Tennessee Rules of Civil Procedure, the judge before whom the case is pending shall refer the action to the Medical Malpractice Board for review of the claim. After notice to all parties of the hearing by the board, the board conducts a hearing with disposition to be made not later than one year from the date of the filing of the request for review with the board. The board makes recommendations which may be either accepted or rejected by the parties. If the recommendations are accepted, a settlement agreement is prepared and the litigation is at an end. If the recommendations are accepted, a settlement agreement is prepared and the litigation is at an end. If the recommendation is not accepted, the claimant may proceed with his malpractice action. TCA § 23–3403(a) and (b). The board consists of an attorney, a physician and a member of the public. TCA § 23–3406. The board maintains a calender of malpractice claims and parties may conduct voir dire of prospective board members challenging their eligibility. TCA § 23–3408. Hearings before the board are conducted in accordance with the Tennessee Administrative Procedure Act, § 4–5–101 et seq., and a hearing officer may be provided by the Department of Public Health. The hearing officer shall preside over the meeting, swear all witnesses, rule on questions of admissibility of evidence and "insure that the proceedings are carried out in accordance with all applicable law and the rules of the board." This section expressly provides, however, that "no transcript shall be made of the hearing." TCA § 23–3409(a). The statute further provides "no statement or any expression of opinion made in the course of the hearing shall be admissible in evidence, either as an admission or otherwise in the trial of the action." A formal statement of recommendations, whether unanimous or not, is submitted, setting forth one or more of the following conclusory statements: (1) the evidence supports the conclusion that the defendant doctor failed to comply with the appropriate standard of care, or (2) the evidence does not support the conclusion that the defendant doctor failed to meet the applicable standard of care, or (3) "that there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury," or (4) "the conduct complained of was or was not a factor." TCA § 23–3409(b).

The foregoing statute has the salutary purpose of endeavoring to resolve medical malpractice claims by reference to a three-person jury, only one of whom is a physician.

■ We are of the opinion that ICG is correct in asserting that the Tennessee statute has no application to a suit prosecuted in a diversity action in a federal forum outside the State of Tennessee. The Act by its terms is triggered only when "the case is at issue in accordance with rules of Tennessee Rules of Civil Procedure," whereupon the judge shall refer the action to the Medical Malpractice Board for review. Necessarily, the statutory language refers to the judge of a court governed by Tennessee Rules of Civil Procedure, although we are aware that one federal court in Tennessee in *Flotemersch v. Bedford County General Hospital*, 69 F.R.D. 556 (E.D.Tenn.1975), held that the provisions of the Tennessee Act were applicable to a federal diversity action in the federal courts of Tennessee and ordered the review provisions of the Act to be complied with before allowing the case to proceed. Chief Judge Pettine in *Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R. I.1978), found the Rhode Island Medical Malpractice Reform Act did not bar the parties from proceeding in a diversity action for medical malpractice instituted in the federal court of Rhode Island. Judge Pettine was of the opinion that since the Rhode Island board or panel was appointed by the state court, it was distinguishable from Tennessee's Act where the panel is established as "an independent agency appointed by the governor of the state," and he found the latter provision would be a

reasonable and appropriate condition to suit which plaintiff should be required to comply with.

We are not at all satisfied with the validity of this distinction; instead, it is our opinion that the Act is one, not of substance but solely of procedural significance applicable to the state courts of Tennessee. This conclusion is supported by several affirmative provisions contained in Tennessee's Act. First, the judge is directed to refer the malpractice action to the board for review "when the case is at issue in accordance with Tennessee Rules of Civil Procedure," a requirement obviously inapplicable to a federal forum sitting in the Northern District of Mississippi. Secondly, the purport of the Act is to attempt to mediate or resolve the malpractice claim, not by a panel of medical experts, but by a three-person jury. The procedural aspects of the Tennessee Act are indeed unique in that while a hearing officer shall be provided, no transcript shall be made of the hearing and no statement or expression of opinion made in the course of the hearing "shall be admissible in evidence ... in any trial of the action." Finally, the formal statement of the review board, whether unanimous or otherwise, makes no findings of fact but only is couched in terms of conclusory statements. We are advised by Tennessee counsel that some of the federal district judges in Tennessee admit the statement of recommendation of the review board, while others exclude it. It seems clear that the Tennessee legislature, in an effort to deal with medical malpractice litigation in the courts of that state, has created a procedure favoring an administrative tribunal participating in efforts to settle or mediate litigation of this variety.

■ We are further of the opinion that the Tennessee Act is not designed to have extraterritorial effect outside the State of Tennessee or in litigation which is properly in a federal court based upon diversity of citizenship with the foreign defendant subject to jurisdiction on the cross-claim in accordance with the express provisions of § 4(f), F.R.Civ.P. Insofar as jurisdiction

and procedural matters are concerned, federal courts are governed generally by the Acts of Congress and the Federal Rules of Civil Procedure, and are not subject to being subscribed by procedural requirements placed upon state courts.

■ Assuming, however, that the Tennessee Act is one of substance and not procedure, it is clear that the Memphis defendants have waived whatever rights they might have had under that Act by their conduct in this litigation. The cross-claim of ICG against the Memphis defendants was filed August 21, 1978, and the Memphis defendants answered on the merits November 6, 1978. In their original answer no reference was made to the Tennessee Malpractice Claims Act nor was there at any time a request for a referral of the case to the Malpractice Board prior to March 1981, or 28 months after the answer was filed. Meanwhile, the defendants sought no referral under the Tennessee Act until December 1980, when counsel for the Memphis defendants informally raised this issue with the court. Instead, in December 1980 the federal case was set for trial on the merits on July 13, 1981, and counsel for the Memphis defendants delayed formal request for referral until March 1981 when the instant motions were filed. Under these circumstances, the court concludes that the Memphis defendants have waived their right, if the Tennessee statute be one of substance, to request this court to stay its hand and refer the case to the Tennessee Malpractice Review Board.

In any event, the findings of the board would not, in our opinion, be admissible in evidence and would have no probative value on the issues to be submitted to the triers of fact in this case.

It is therefore

ORDERED

That the motion of the Memphis defendants to refer the action to the Tennessee Medical Malpractice Review Board and stay proceedings until that board has made recommendations be denied.