Jennifer BOGGS et al., Plaintiffs,

v.

BLUE DIAMOND COAL COMPANY
et al., Defendants.

Civ. A. No. 77–69.

United States District Court,
E. D. Kentucky,
Pikeville Division.

Sept. 8, 1980.

Rogovin, Stern & Huge, Gerald M. Stern, George T. Frampton, Jr., Washington, D. C., J. D. Lee, Madisonville, Tenn., Kelsey E. Friend, Pikeville, Ky., for plaintiffs.

Eugene Goss, Harlan, Ky., for Vera Galloway & Celinda Sparkman.

James D. Asher, Polly, Craft & Asher, Whitesburg, Ky., for Ethel Sturgill.

Foster D. Arnett, Knoxville, Tenn., Bert T. Combs, Tarrant, Combs & Bullitt, Louisville, Ky., Craft, Barret, Haynes & Ward, Hazard, Ky., Hudgins, Coulling, Brewster & Morhous, Bluefield, W. Va., Stratton, May & Hays, Pikeville, Ky., for defendants.

Cole, Harned & Broderick, Bowling Green, Ky., for intervenors.

BERTELSMAN, District Judge.

## INTRODUCTION

This is a wrongful death action brought by the personal representatives of 15 coal miners, killed in a mine disaster, which occurred March 9, 1976, when an alleged accumulation of methane gas exploded. Plaintiff, Mary Coots, is the administratrix of one of the deceased miners. The defendant is a mining company, claimed by the plaintiffs to be responsible for ventilation safety within the mine.

The matter presently before the court involves difficult issues which are of great importance to the individual plaintiff in the case, and also raise significant questions of first impression and of constitutional dimensions affecting the administration of the federal courts.

The principal issue is whether, when substitution must be made of a new party for a deceased party, the time limits which must be met in effecting such substitution are controlled by federal law or the law of Kentucky. It comes before the court in the following manner.

## FACTS

■ Originally, the personal representative of the deceased miner, Virgil Coots, Jr., was Geraldine Coots, his wife, who was appointed administratrix of his estate by the Harlan District Court. Subsequently, Geraldine Coots herself died on January 25, 1978. The present movant, Mary Coots, was thereafter, on October 27, 1978, appointed by the appropriate probate court administratrix of the estate of the deceased miner as successor to Geraldine Coots, and now moves this court, pursuant to F.R. Civ.P. 25(a), to substitute her as a plaintiff in this action. The motion for substitution, however, was not filed until May 4, 1979. The significance of this last date is that it is not within one year of the date of the death of Geraldine Coots, the original administratrix. The defendant objects to the substitution, contending that the Kentucky statutes[1] providing for such substitution have not been complied with by the movant.[2]

---

1. K.R.S. 411.140 "No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract."

K.R.S. 395.278 "An application to revive an action in the name of the representative or successor of a plaintiff, or against the representative or successor of a defendant, *shall be made within one (1) year after the death of a deceased party.*" (Emphasis added).

K.R.S. 395.280 "When any personal representative commences an action or is sued, and then dies, is removed or is superseded by another before the termination of the action, his successor may, by order of court, be substituted for the original plaintiff or defendant."

2. Inasmuch as K.R.S. 395.278 refers to the "successor" of an original plaintiff, the statute must be construed to apply to the substitution of one representative party for another, as well

The movant argues that the one–year time limit imposed by K.R.S. 395.278 is not controlling, since it is contrary to F.R.Civ.P. (25)(a)(1).[3]

## STATEMENT OF THE PROBLEM

Although more has been written about *Erie Railroad Co. v. Tompkins*[4] and the ensuing history of the doctrine it announced than most other legal problems, the lower federal courts are still presented with thorny problems concerning choice of federal or state law in cases where jurisdiction is founded upon diversity of citizenship. The court is here confronted with such a problem, and finds little direct precedent to guide it in resolving the issue here presented.[5] In attempting to resolve the problem before it, the court finds that the recent decision of the Supreme Court of the United States in *Walker v. Armco Steel Corp.*[6] requires a reexamination of the entire *Erie* problem as it affects cases of this kind, in which state law and a Federal Rule of Civil Procedure are in direct conflict.

In undertaking this reexamination, it is best to follow the method prevalent in modern cinema and television writing by starting where we are, and making use of a flashback to determine how we got here.

## WHERE WE ARE: Walker v. Armco Steel Corporation

The most recent episode in the continuing drama of the development of the *"Erie* doctrine" is the decision of the Supreme Court of the United States in *Walker v. Armco Steel Corp.*[7] There, a diversity suit was filed in federal court before the expiration of the applicable Oklahoma statute of limitations for personal injury actions, but the defendant was not served with process until after the expiration of the limitations period. Under such circumstances, the Oklahoma statute provided that the action was not timely commenced. The plaintiff argued that the seeming bar of the state statute was overcome by the applicability of F.R. Civ.P. 3.[8]

The Supreme Court held that state law applied and the action was barred. Federal Rule 3 and the state statute were not in conflict, the Court reasoned, because Rule 3 purports to say nothing concerning the toll-

---

as to the substitution for a deceased party of his personal representative.

3. "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made *not later than 90 days after the death is suggested upon the record* by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party." (Emphasis added).

4. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938)

5. *See* 3B Moore, *Federal Practice* ʼ 25.04[3]; Wright & Miller, *Federal Practice and Procedure* § 1952. Some courts have held that federal law controls substitution in federal question cases. *See Downie v. Pritchard*, 309 F.2d 634 (8th Cir. 1962); *Lamb v. United Security Co.*, 59 F.R.D. 44 (S.D.Iowa 1973). In a diversity

case one court has said by way of dicta that state law should control with regard to the time limit. *Ransom v. Brennan*, 437 F.2d 513 (5th Cir. 1971). The statement has been severely criticized. *See* Moore and Wright and Miller, *supra.* The second circuit has held in a diversity case that, as construed to allow substitution of a foreign administrator, Rule 25(a) prevails over contrary state law. *Iovino v. Waterson*, 274 F.2d 41 (2d Cir. 1959). *Cf. Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir. 1980) (relation back of amendment substituting proper party.)

6. - - U.S. ---—, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). The ruling of this court discussed in this opinion was made prior to the decision in *Walker*, but the opinion has been expanded to take that decision into consideration.

7. ·-— U.S. ——, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

8. F.R.Civ.P. 3 reads: "A civil action is commenced by filing a complaint with the court." *Cf.* Ky.R.Civ.P. 3: "A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith."

ing of the statute of limitations, but provides for the commencement of the action only for the purpose of triggering time limits under the Federal Rules and the administration of the suit in the federal courts.[9]

The Court's opinion requires that a lower federal court, confronted with an issue such as that in the case at bar, must undertake a three-step analysis:

1. Is the scope of the Federal Rule, when given its plain meaning, sufficiently broad to control the issue before the court? [10]

2. If so, is the Federal Rule within the scope of the Rules Enabling Act? [11]

3. If so, is the Rule also within a constitutional grant of power, such as that to be found in Article III of the Constitution, providing for the establishment of the federal courts, as implemented by Article I, § 8, especially the Necessary and Proper Clause? [12]

In *Walker*, the Court reached only the first step of this analysis, because it found that the scope of Federal Rule 3 was not sufficiently broad to cover the matter of when a state statute of limitations would be tolled. Therefore, the Court held, there was no conflict between the state and federal provisions. In the case at bar, however, there is a direct conflict between F.R. Civ.P. 25(a), which states that a substitution for a deceased party may be made within 90 days of the time the suggestion of death is made upon the record, and K.R.S. 395.278, which requires that such substitution be made within one year of the death of the original party.[13]

Therefore, to resolve the issue presently before it, this court must proceed to the second two steps of the *Walker* analysis. The *Walker* opinion affords little guidance as to how the analysis is to be made. While there is no shortage of pre-*Walker* authority, either in the form of court decisions or scholarly commentaries, it is conflicting for the most part. Therefore, it is necessary for this court to review the history of the *Erie* Doctrine for guidance in making the required statutory and constitutional analysis. This opinion will reexamine the *Erie* line of decisions, highlighting aspects of them which appear to be more significant in the light of *Walker* than previously.

HOW WE GOT HERE: Historical Background:

*Erie Railroad Company v. Tompkins and The Rules of Decision Act*

Any study of the state-federal choice of law problem in federal diversity of citizenship cases must begin with the Rules of Decision Act. Enacted in 1789 contemporaneously with the establishment of the federal courts, this important statute has remained in effect essentially unchanged since that time. Presently compiled as 28 U.S.C. § 1652, the Act reads:

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

Prior to 1938, it had been held that the term "rules of decision" as used in the Act only applied to statutes and not to the case

**9.** This was the same problem the Court had resolved in the same way 31 years earlier in *Ragan v. Merchants Transfer and Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). As will be discussed herein the viability of the *Ragan* result had been cast into doubt by subsequent developments. This caused the Court to grant certiorari in *Walker*, apparently in order to reaffirm the *Ragan* holding.

**10.** —— U.S. —— at ——, 100 S.Ct. 1978, at 1985, n. 9, 64 L.Ed.2d 659.

**11.** 28 U.S.C. § 2072, quoted in text accompanying note 31, *infra*.

**12.** *See* note 99, *infra*.

**13.** Under state practice, when the fact of the death of the original party becomes of record is immaterial. The analogous state rule of procedure, Ky.R.Civ.P. 25.01, incorporates the limitation of K.R.S. 395.278 by providing that substitution for a deceased party must be made "within the period allowed by law."

law of a state. Known as the rule of *Swift v. Tyson*[14] after the case first enunciating it, the principle was that in matters of general jurisprudence, federal courts were not bound by the case law of the state as declared by its highest court. Under the rule of *Swift v. Tyson*, the requirement of the Rules of Decision Act to impose state law was not considered to

> "apply . . . to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as for example, to the construction of ordinary contracts or other written instruments and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves [the federal courts], that is, to ascertain upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case."[15]

This was the background when the *Erie Railroad Co. v. Tompkins* case was decided on April 25, 1938. So much exegesis has been imposed upon the original scripture of *Erie* that the narrow holding of the decision itself has been to a large extent obscured. It is necessary to reexamine it now, particularly in the light of the specific requirement in *Walker, supra*, that constitutional analysis is required where a state and federal rule are in direct conflict.

The narrow issue in *Erie* was whether a federal court, exercising jurisdiction by virtue of diversity of citizenship, would apply state or federal law in determining the status as a licensee or a trespasser of a pedestrian who, while walking along the right-of-way beside a railroad track, was struck by a projection from a passing train. No constitutional issue was raised in the briefs of counsel.[16] Nor was the rule of *Swift v. Tyson* questioned in the briefs. Rather, the parties argued for or against the status of the issue before the court as a matter of general or local law, as suited the interests of their clients. Nevertheless, the opening lines of this landmark decision were:

> "The question for decision is whether the oft-challenged Doctrine of *Swift v. Tyson* shall now be disapproved."[17]

The *Erie* decision held that *Swift v. Tyson* was overruled, and that thereafter federal courts in diversity cases would apply state law, whether state statutory law or common law derived from the decisions of the state courts, as to issues not governed by federal law.

The principal reasons given for the reversal were that then recent scholarship had shown that the original interpretation of the Rules of Decision Act, as applying only to statutory law or rules peculiarly local, was erroneous. Also, it was pointed out in the decision that there had been widespread criticism of the doctrine of *Swift* because of blatant forum-shopping that had resulted.[18]

The Court also felt that the Rule of *Swift v. Tyson* had prevented uniformity, because the state courts persisted in their own inter-

---

**14.** 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842).

**15.** *Erie Railroad Co. v. Tompkins*, 304 U.S. at 71 72, 58 S.Ct. at 818–19. This rule of *Swift v. Tyson* was based to a large extent on a concept that the principles of the common law were not established by the decisions of courts, but had an independent existence, and that the courts only discovered them. Since the state courts were not regarded as making the common law as the state legislatures made statute law, it did not seem an undue violation of federalism for federal courts to reach a different opinion from the state courts as to what the independently-existing common law rules were. When the more realistic view regarding the law-making functions of courts came into vogue, it had a *substantial influence in the abandonment of the*

Rule of *Swift v. Tyson*. *See* Wright, *Federal Courts* § 54.

**16.** The briefs are summarized in 304 U.S. at 65–69, 58 S.Ct. at 817–818.

**17.** 304 U.S. at 69, 58 S.Ct. at 818.

**18.** 304 U.S. at 74–75, 58 S.Ct. at 820–821. The *Erie* Court cited as an outrageous example of forum-shopping the case of *Black & White Taxicab Co. v. Brown & Yellow Taxicab Co.*, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928) in which the Court permitted the rule of *Swift v. Tyson* to be used by a corporation artificially to avoid a rule of state law by reincorporating in a new state to create diversity jurisdiction.

pretation of the common law. Therefore, different rules were applied in a given state depending on whether the federal or state forum was invoked. The Court also remarked on the "impossibility of discovering a satisfactory line of demarcation between the province of general law and that of local law."[19]

In overruling the long–standing doctrine of *Swift v. Tyson*, however, the Court relied most heavily on the following two considerations: First, *Swift v. Tyson* introduced grave discrimination by non–citizens against citizens in that it gave the non–citizen plaintiff (or a citizen with a claim against a non–citizen) in effect a choice of the rules of law to be applied to a dispute.[20] Second, the *Swift* doctrine violated fundamental precepts of federalism.

It has been much debated whether *Erie Railroad Co. v. Tompkins* is a statutory or

constitutional decision. Strictly speaking, no constitutional holding was required, because it was only necessary to the decision of the court to reinterpret the Rules of Decision Act. Nevertheless, as Professor Wright has pointed out, the opinion of the Court is such that it would be foolish to say that the decision had no constitutional ramifications.[21] The Court specifically and emphatically stated:

> "If only a question of statutory construction were involved, we should not be prepared to abandon a doctrine so widely applied throughout nearly a century. But the unconstitutionality of the course pursued has now been made clear and compels us to do so."[22]

The Court further elaborated on the constitutional basis of its decision in emphatic language which appears in the margin.[23]

---

**19.** 304 U.S. at 74, 58 S.Ct. at 820.

**20.** 304 U.S. at 75, 58 S.Ct. at 821.

**21.** Wright, *Federal Courts* § 56.

**22.** *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 at 77–78, 58 S.Ct. 817 at 822.

**23.** "*Third.* Except in matters governed by the the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. As stated by Mr. Justice Field when protesting in *Baltimore & Ohio R. Co. v. Baugh*, 149 U.S. 368, 401, [13 S.Ct. 914, 927, 37 L.Ed. 772,] against ignoring the Ohio common law of fellow–servant liability:

'I am aware that what has been termed the general law of the country–which is often little less than what the judge advancing the doctrine thinks at the time should be the general law on a particular subject–has been often advanced in judicial opinions of this court to control a conflicting law of a State. I admit that learned judges have fallen into the habit of repeating this doctrine as a convenient mode of brushing aside the law of a State in conflict with their views. And I

confess that, moved and governed by the authority of the great names of those judges, I have, myself, in many instances, unhesitatingly and confidently, but I think now erroneously, repeated the same doctrine. But, notwithstanding the great names which may be cited in favor of the doctrine, and notwithstanding the frequency with which the doctrine has been reiterated, *there stands, as a perpetual protest against its repetition, the Constitution of the United States, which recognizes and preserves the autonomy and independence of the States,-independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the States is in no case permissible except as to matters by the Constitution specifically authorized or delegated to the United States.* Any interference with either, except as thus permitted, is an invasion of the authority of the State and, to that extent, a denial of its independence.'

\* \* \* \* \* \*

"Thus the doctrine of *Swift v. Tyson* is, as Mr. Justice Holmes said, '*an unconstitutional assumption of powers by courts of the United States* which no lapse of time or respectable array of opinion should make us hesitate to correct.' In disapproving that doctrine we do not hold unconstitutional § 34 of the Federal Judiciary Act of 1789 [the Rules of Decision Act] or any other Act of Congress. We merely declare that in applying the doctrine this Court and the lower courts have invaded rights which in our opinion are reserved by the Constitution to the several States." 304 U.S. at 78–79, 58 S.Ct. at 822–23. (Emphasis added).

So strong is the constitutional language of *Erie* that it cannot be said that it has no constitutional implications. However, as is now recognized, these implications have over the years been overstated, both by the Court,[24] and commentators.

Examining *Erie*, as we now do, from the vantage gained from hindsight, certain salient aspects of the decision may be noted. First, there is nothing in the decision itself, setting aside for the moment subsequent cases interpreting it, which would require any federal statute or rule made pursuant to the authority of the Constitution of the United States to be held unconstitutional. The Rules of Decision Act itself which requires that state law be used as the rules of decision in cases in federal court, makes an exception where a federal law is applicable. In stating its holding, the Erie Court was careful to note that *"except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."* [25]

Also it cannot be forgotten that at the time of the *Erie* decision in 1938, the federal statute authorizing and empowering the Supreme Court of the United States to enact Rules of Procedure for the federal courts had been passed, and a set of rules had been prepared, which were scheduled to go into effect on September 1, 1938. No-

where does the opinion question the validity of these rules. As Mr. Justice Reed pointed out in his concurring opinion "no one doubts federal power over procedure."[26]

■ Again from the perspective of hindsight, what the Court said in *Erie* was this. Article III and Article I § 8[9][27] of the Constitution conferred power upon Congress to establish a national court system. Article I § 8[18], the Necessary and Proper clause, further granted to the federal government power to enact laws necessary and proper to the operation of this national court system. But it is not necessary and proper for the operation of a national court system to establish rules for deciding cases, whether such rules are "general" or "local" in nature, if those rules are unrelated to the operation of that national court system.

In this court's view, the constitutional holding in *Erie* is succinctly stated in the *Erie* opinion's quotation of Justice Field: "Supervision over either the legislation or the judicial action of the States is in no case permissible except as to matters by the Constitution specifically authorized or delegated to the United States."[28]

Thus, if an explicit federal rule or statute is applicable and constitutional, federal law applies.[29] This, in the opinion of this court,

---

**24.** *See* the discussion below of the several decisions of the Supreme Court interpreting *Erie Railroad Co. v. Tompkins.* At one point in this history, the Court seemed to be saying that any Federal Rule was unconstitutional which led to a different outcome in an action than state law. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *Woods v. Interstate Realty*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); *Cohen, Executrix, et al. v. Beneficial Industrial Loan Corp., et al.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The extreme views of the constitutional force of *Erie Railroad Co. v. Tompkins* that seem to be expressed in these cases, were moderated by the discussion of the Court in *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**25.** 304 U.S. at 78, 58 S.Ct. at 822 (emphasis added). *See* Thomas, *The Erosion of* Erie *in*

the Federal Courts; Is State Law Losing Ground? 77 Brig. Young L.Rev. 1, 10 n. 55 (1977), for the view that *Erie* was originally intended to eliminate choice of law problems in diversity cases by holding that federal law should control where a specific statute or rule was applicable and state law should control in all instances not preempted by explicit federal law. *See* discussion in note 78, *infra*.

**26.** 304 U.S. at 92, 58 S.Ct. at 828.

**27.** *See* note 99, *infra*.

**28.** *See* note 33, *supra*. *See* Ely. *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693, 700 ff. (1974).

**29.** The substance–procedure distinction is applicable only to those rules stemming from the Enabling Act pursuant to which the Federal Rules of Civil Procedure, but not the Federal Rules of Evidence, were enacted. *See* discussion, *infra*. *See* note 78, *infra*, on the problem

is what the Supreme Court implied in *Erie*, and what it has held again in *Walker*,[30] after 42 years of intervening decisions and various formulations of the so–called *Erie* doctrine. That the reasons for arriving at this conclusion may be clear, it is necessary to examine the decisions that occurred during these 42 years.

### The Rules Enabling Act

Two keystone federal statutes are important in our analysis. One, the Rules of Decision Act, was discussed above, the other is the Rules Enabling Act [31] of 1934 which reads in pertinent part:

"The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions

. . . .

"Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution."

■ It should be noted that the Enabling Act itself embodies a substance–procedure distinction. Therefore, whether such a distinction is required from a constitutional point of view or not, each Federal Rule of Civil Procedure may be attacked on the ground that it is not in compliance with the Enabling Act in that it is not addressed to a subject defined in the first paragraph of the Act or abridges the limitation of the second paragraph, that it "shall not abridge, enlarge, or modify any substantive right." [32] These principles must be kept in mind in

analyzing the post–*Erie* decisions hereinafter discussed.

### *Sibbach v. Wilson & Co., Inc.*:

### The Substance–Procedure Distinction

*Sibbach v. Wilson & Co., Inc.*[33] was the first case in which the Court undertook to comment in depth upon the procedure–substance distinction, as it appears in the Enabling Act.[34] In that decision, the Court commented on the argument of a personal injury plaintiff that she could not be made to submit to a physical examination pursuant to F.R.Civ.P. 35 and 37, because such requirement abridged her substantive rights in contravention of the limitation of the Enabling Act. The essence of the plaintiff's argument was that "substantive" was used in the Enabling Act in the sense of important. The Court rejected the argument.

The principal significance of *Sibbach* in modern analysis lies in its definition of "substantive rights" as used in the Enabling Act. "Substantive rights," the Court said, are "confined to rights conferred by law to be protected and enforced in accordance with the adjective law of judicial procedure." [35] The Court attempted to meet the challenge of providing a test to distinguish substance from procedure:

"The test must be whether a rule really regulates procedure,–the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. That the rules in question are such is admitted." [36]

---

presented when no federal rule or statute is applicable.

**30.** —- U.S. —-, 100 Sup.Ct. 1978, 64 L.Ed.2d 659, (1980), *supra*.

**31.** Now 28 U.S.C. § 2072.

**32.** For a further discussion of the procedural–substantive distinction, *see* discussion, *infra*, p. 1113.

**33.** 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941).

**34.** In *City Service Oil Co. v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939) the Court briefly referred to "a substantial right" in holding that the placing of burden of proof should be in accord with state law in a diversity action, but without making an in–depth analysis.

**35.** 312 U.S. at 13, 61 S.Ct. at 426.

**36.** 312 U.S. at 14, 61 S.Ct. at 426. The admission mentioned was made by the plaintiff in the trial court for choice of law reasons.

In *Sibbach* the Court did not discuss the constitutional basis of *Erie* but merely held that Rule 35 was within the scope of the Enabling Act, and therefore, valid.

*The Outcome Test: Guaranty Trust Co. v. York and the Three 1949 Decisions*

As the above brief historical review has shown, until 1945 applications of the *Erie* Doctrine had not caused much difficulty.[37] In 1945, however, the Court decided *Guaranty Trust Co. v. York*,[38] in which the famous and since largely discredited "outcome test" was stated. Later, in three cases decided on the same day in 1949, the outcome test reached its high–water mark. The cases are significant from a modern perspective in that the outcome test must be dealt with in any meaningful *Erie* analysis, and therefore must be understood. Further, the facts of the cases serve to point up certain problem areas which must be considered in any attempt to formulate a consistent doctrine in this area.

*Guaranty Trust Co. v. York* held that in an equity diversity case a federal court was required to apply the applicable state statute of limitations. Under the method of analysis recently enunciated in *Walker v. Armco Steel Corp.*,[39] this result would have been achieved at the threshold, because the matter of statutes of limitations is not covered by the Federal Rules. The rationale of the Court in *Guaranty Trust Co. v. York*, however, was considerably broader. The question that must be asked concerning the application of a rule of state law in a diversity action, the Court said, is:

". . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?"[40]

Further, the Court said, "the intent of that decision [*Erie*] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."[41]

These statements by the Court, which a close analysis of the decision shows were unnecessary, were unfortunate, and caused many problems with which we are still struggling. Although the "outcome test" has been virtually repudiated by subsequent decisions, its influence on so many cases was such that it continues[42] to cause diffi-

---

**37.** In *Klaxon Co. v. Stentor*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) the outcome test was foreshadowed when the Court held that a federal court sitting in a diversity case must apply the conflict of laws rules of the forum state. The Court emphasized, however, the ideal of achieving "equal administration of justice in coordinate state and federal courts sitting side by side." 313 U.S. at 496, 61 S.Ct. at 1021. Nor did the Court find difficulty in holding that F.R.Civ.P. 8(c) had no effect on the burden of *proving* an affirmative defense, but only prescribed which party must *plead* it. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). *See* Wright, *Federal Courts* § 59.

**38.** 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

**39.** *See* discussion *supra* at pp. 1108–1109.

**40.** 326 U.S. at 109, 65 S.Ct. at 1470.

**41.** *Id.* Another troublesome statement made by the Court in the opinion was that a federal court, for the purpose of adjudicating a state created right "is for that purpose, in effect, only another court of the State." 326 U.S. at 108, 65 S.Ct. at 1469. At another point the Court said:

"And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it *significantly affect the result of a litigation* for a federal court to disregard a *law of a State that would be controlling in an action upon the same claim by the same parties in a State court?*" 326 U.S. at 109, 65 S.Ct. at 1470. (Emphasis added).

**42.** A recent significant decision based on the outcome test is *Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979).

culty, because it is inconsistent with the approach the Court has taken in its more recent decisions, especially *Hanna v. Plumer* [43] and *Walker v. Armco Steel Corp.*,[44] discussed more fully below.

The type of serious problem caused by attempts to apply the outcome test is illustrated by three decisions decided on the same day, June 20, 1949. In the first, *Ragan v. Merchants Transfer & Warehouse Co.*,[45] the Court held that a state statute, which provided that an action was commenced for statute of limitations purposes only at the time of service of summons, was controlling because of the outcome test, despite the provision of F.R.Civ.P. 3 that an action is commenced by the filing of a complaint. The Court has now said in *Walker v. Armco Steel Corp.*[46] that the decision turned on the consideration that Rule 3 does not say anything about tolling statutes of limitations, but this was not the thrust of the Court's rationale in the decision itself.

The second decision [47] held that a state statute which prohibited a corporation which had not qualified to do business in the state from bringing a suit in the state court was applicable in a federal court of the state in a diversity case, because of the outcome test. The third decision [48] held that a state statutory requirement that a plaintiff in a stockholder's derivative action post a substantial bond for costs was binding in the federal court.

■ As has frequently been pointed out, the problem with the outcome test is that it is so sweeping as to be meaningless. Any rule of procedure will affect the outcome of a case, if it is not followed and the sanction for not following it is dismissal.[49] An excellent example is the Kentucky substitution time limit in the case at bar.

*The Balancing Approach: Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*

The issue in *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*[50] was whether the problem of the status of the plaintiff as the defendant's employee for purposes of the exclusive remedy provision of the state workmen's compensation act should be decided in a federal diversity case by the judge, as would be the practice under state law, or by a jury. The decision was that the matter was one for the jury, under federal law. A simple rationale for the result, would have been that the matter was one controlled by the Seventh Amendment to the Constitution of the United States and F.R.Civ.P. 38, guaranteeing the right to trial by jury in civil cases, a right which, under the Enabling Act, was not to be diluted by the Federal Rules.

The Court went much further, however, and in response to an argument that the outcome test should be applied, introduced the balancing concept into *Erie* analysis, stating that the outcome test need not be

**43.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**44.** --- U.S. ------, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

**45.** 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949)

**46.** — U.S. ——, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

**47.** *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

**48.** *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

**49.** A pure outcome test, if deemed constitutionally required, would invalidate many, if not most, of the Federal Rules of Evidence. For example the use of learned treatises permitted under F.R.Ev. 803(18) might easily lead to a different outcome than a more restrictive use. So might the liberal attitude F.R.Ev. 801 toward the admissibility of implied assertions. *See United States v. Zenni*, 492 F.Supp. 464 (E.D.Ky.1980). The Federal Rules of Evidence were not enacted pursuant to the Enabling Act, and are not subject to its substance–procedure limitation. *See* Wright, *Federal Courts* § 93, and note 102, *infra*. But if the outcome test has a constitutional basis the validity of many of the Rules of Evidence in diversity cases is in grave doubt.

**50.** 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

employed in the face of countervailing federal considerations.[51]

There was considerable difficulty in applying the *Byrd* balancing test, and its introduction only served to heighten the confusion and led to inconsistent results,[52] which the Court unsuccessfully attempted to lay to rest in its next important decision in 1965.

### Hanna v. Plumer: Renewed Emphasis on the Enabling Act

In *Hanna v. Plumer*,[53] the issue was whether service of process under F.R.Civ.P. 4(d)(1), which permitted leaving copies of the process at the dwelling house of the plaintiff, was sufficient in a diversity case, or whether to be valid service had to be made under a state statute requiring in-hand personal service in certain situations. Illustrative of the confusion which was pre-

vailing in *Erie* analysis at the time, the Court of Appeals had held that important state policies were involved and that state law should be applied because the matter was substantive.

Reversing the decision below, the Supreme Court pointed out that the defendant was mistaken in relying on the *Erie–York–Ragan* line of cases when a Federal Rule of Civil Procedure was applicable. The outcome test, the Court held, could not be so applied.

The Court expressed doubt whether the outcome test would have required application of the state rule, even if there had been no federal rule applicable. The outcome test, it stated, should be considered only in the light of "the twin aims of the *Erie* Rule: discouragement of forum shopping and avoidance of inequitable administration of the laws."[54]

---

**51.** "But there are affirmative countervailing considerations at work here. The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common law actions, it distributes trial functions between judge and jury and, under the influence· if not' the command· of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury. *Jacob v. New York*, 315 U.S. 752 [, 62 S.Ct. 854, 86 L.Ed. 1166.] The policy of uniform enforcement of state created rights and obligations, see, *e. g., Guaranty Trust Co. v. York, supra,* cannot in every case exact compliance with a state rule ·· not bound up with rights and obligations · which disrupts the federal system of allocating functions between judge and jury. *Herron v. Southern Pacific Co.,* 283 U.S. 91 [, 51 S.Ct. 383, 75 L.Ed. 857.] Thus the inquiry here is whether the federal policy favoring jury decisions of disputed fact questions should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court.

"We think that in the circumstances of this case the federal court should not follow the state rule. It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts." 356 U.S. at 537–538, 78 S.Ct. at 901 (1957).

**52.** *See* Wright, *Federal Courts* § 59:
"The difficulty in applying the *Byrd* test probably stemmed from the fact that there is

no scale in which the balancing process called for by that case can take place. There is no way to say with assurance in a particular case that the federal interest asserted is more or less important than the interest in preserving uniformity of result with the state court. Even if there were such a scale, the weights to be put in it must be whatever the judges say they are. Uniformity of procedure among the federal courts is thought 'important' by one court but of only 'slight' weight to another. There was no objective standard by which it could be said that one of those evaluations was 'wrong' and the other 'right.' "
*See* also Ely, *supra,* note 28 at 709. For an example of an application of both the outcome and balancing tests, *see Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979).

**53.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**54.** 380 U.S. at 468, 85 S.Ct. at 1142. In a footnote to the above statement, the Court indicated that balancing the importance of state and federal policies was inappropriate unless "application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or . . . application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Id.,* n.9.

The Court went even further, however, to hold that the outcome or balancing tests need not even be employed when a federal rule was squarely applicable to the situation.[55] The Court re–emphasized the test of *Sibbach v. Wilson & Co., Inc.*,[56] as providing the substance–procedure test to be used in determining whether an applicable federal rule was within the scope of the Enabling Act.

The Court stated that the *Erie* line of cases was not to be interpreted as casting a doubt on the power of Congress, pursuant to Article III and the Necessary and Proper Clause to "prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules."[57] In addition, the Court said:

> "To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state–created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act. Rule 4(d)(1) is valid and controls the instant case."[58]

### PRESENT STATE OF THE LAW

Flashback concluded, we have come full circle back to the most recent decision of the Supreme Court addressing the state–federal choice of law problem in diversity cases. It will be recalled that in this most recent decision, *Walker v. Armco Steel Corp.*,[59] the Supreme Court prescribed a three–part test for making the analysis: (1) Is there a direct conflict between the state and federal rules; (2) if so, is the federal rule within the Enabling Act; and (3) if so, is the federal rule constitutional?[60]

In the present case, the first criterion is met, since there is a direct conflict between K.R.S. 395.278[61] and F.R.Civ.P. 25(a). Therefore, we must proceed to the remaining two steps of the *Walker*[62] analysis.

 Is F.R.Civ.P. 25(a) within the scope of the Enabling Act? The answer must be yes.[63] The Enabling Act delegates to the Supreme Court of the United States a portion[64] of the constitutional power of Congress under Article III to provide rules necessary for the operation of a national court system. Under the Necessary and Proper Clause, Congress is empowered to achieve the goal of providing a uniform and impartial national court system by any means reasonably calculated to attain that goal. The famous gloss of Chief Justice Marshall on the breadth of the Necessary and Proper Clause, is applicable:

> "Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."[65]

It is beyond dispute that uniform rules of procedure are "plainly adapted" to the end of providing a uniform system of national

---

**55.** 380 U.S. at 469–70, 85 S.Ct. at 1143. *See* discussion, *supra,* at p. 1113.

**56.** 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) *see* discussion, *supra* at p. 1113.

**57.** 380 U.S. at 473, 85 S.Ct. at 1145.

**58.** 380 U.S. at 473–74, 85 S.Ct. at 1145.

**59.** ·· U.S. ‑‑‑, 100 S.Ct. 1978 (1980), 64 L.Ed.2d 659 discussed, *supra,* at pp. 1108–1109.

**60.** *Cf.* the analysis under the Enabling Act and Constitution by Judge Friendly in *Iovino v. Waterson,* 274 F.2d 41 (2d Cir. 1959), holding that F.R.Civ.P. 25(a) permits substitution of the administrator of a deceased nonresident defendant, contrary to state law.

**61.** *See* note 1, *supra.*

**62.** In deciding *Walker,* the Supreme Court found it unnecessary to proceed beyond this first level of the tripartite test, since it held that the issue presented in that case was not within the scope of one of the Federal Rules of Civil Procedure.

**63.** *Cf. Iovino v. Waterson, supra,* 274 F.2d 41 at 45ff (2nd Cir. 1959).

**64.** The Constitution is broader than the Enabling Act. *See* discussion, *infra,* at pp. 1122–1123.

**65.** *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 420, 4 L.Ed. 579 (1819).

courts. To provide such a court system the Enabling Act delegates to the Supreme Court the power to prescribe "general rules" governing, among other things, "pleadings, and motions, and the practice and procedure" of the federal district courts. If the Act went no further, there would be little problem in resolving the issue presented by the case at bar, because the manner of making a substitution for a deceased party is within one of the enumerated subjects of the delegated rule–making power. But the statute goes further and *prohibits* the Supreme Court in exercising its rule–making power to "abridge, enlarge or modify any substantive right."

The highest court of Kentucky has declared that the one–year time limit prescribed by state law for effecting a substitution for a deceased party is substantive, and embodies an important state policy.[66] This court, then, is squarely presented with the difficult task of distinguishing "substance" from "procedure," as these terms are used in the Enabling Act.

It may be more feasible to mount an expedition in search of the end of the rainbow or the source of the Nile than to seek a practical, universal test for distinguishing substance from procedure, because the terms mean different things in different contexts, and every time a definition is assayed, some situation eventually seems to arise in which the definition does not produce satisfactory results.

Early in the line of cases discussed in this opinion is *Sibbach v. Wilson & Co., Inc.*[67] in which the Supreme Court stated that the test to distinguish substance from procedure, under the Enabling Act, "must be whether a rule really regulates procedure,– the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." [68] In 1965 the Court, deprecating the overbroad outcome and balancing tests, which had temporarily gained vogue in intervening cases, returned to the test of *Sibbach* as the touchstone for interpreting the Enabling Act.[69]

Undoubtedly the test of *Sibbach*, although circular in its terms, is clear enough to provide a means for solving the vast majority of cases. Obviously, a rule such as F.R.Civ.P. 8, implementing the standard of notice pleading "really regulates procedure." But in certain borderline areas, such as the substitution problem presented in the case at bar, application of state statutes of limitations, allocation of burden of proof,[70] or door–closing or bond–posting requirements, courts have found it difficult to say whether a particular rule "really regulates procedure," or reaches a substantive right, in a manner prohibited by the Enabling Act.

It has been suggested by a leading commentator that the substance–procedure distinction in the context of the Enabling Act should depend on "whether the state provision embodies a substantive policy or represents only a procedural disagreement with the federal rulemakers respecting the fairest and most efficient way of conducting

---

**66.** *See Daniel v. Fourth & Market, Inc.,* Ky., 445 S.W.2d 699 (1968), holding that Ky.C.R. 6, providing for extensions of time limits for "excusable neglect" and other reasons, is not applicable to the one -year limit prescribed by state law because that limit is substantive and beyond the scope of the state rule–making power. The court reasoned that the right to revive an action was unknown to the common law and was a matter of legislative grace. The court held that the one–year limitation was a statute of limitations for the exercise of this legislatively created right. *See* note 73, *infra.*

**67.** 312 U.S. 1 (1941), 61 S.Ct. 422, 85 L.Ed. 479 discussed, *supra,* at p. 1113.

**68.** 312 U.S. at 14, 61 S.Ct. at 426.

**69.** *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), *see* discussion *supra,* at p. 1116. The Court recognized a broader test for delineating the constitutional power of Congress to implement a national court system. *See* discussion, *infra,* at p. 1122.

**70.** *See Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), distinguishing burden of pleading from burden of proof.

litigation."[71] Under this view, a rule would be substantive, and subject to the limitation of the second part of the Enabling Act, if it has any purpose that is non–procedural, even if it also has a procedural purpose.[72]

■ Were this hypothesis applied to the case at bar, the declaration of the highest Court of Kentucky that the one–year substitution time limit rule is substantive[73] would be controlling, and the motion for substitution would have to be denied. However, this court hereby holds that the test proposed by Professor Ely is not the proper one to be applied.

■ The test proposed by the learned commentator is inconsistent with *Sibbach v. Wilson & Co., Inc.*[74] as reaffirmed in *Hanna v. Plumer*.[75] It ignores the sweep of the Enabling Act in its efforts to implement a uniform, impartial *national* court system. Most especially, it ignores the strong policy of uniformity, evidenced by Congress in sanctioning the enactment of the Federal Rules of Civil and Criminal Procedure and the Federal Rules of Evidence.[76]

The problems inherent in the approach of weighing state policies against the express provisions of a federal rule are well illustrated by the case at bar, in which an out–of–state attorney relied on the time limit provided by F.R.Civ.P. 25(a). If the suggested test were adopted, an attorney in his position would have to research state law with regard to the matter covered in practically every Federal Rule of Civil Procedure to determine if there were a contrary state rule supported by non–procedural state policies conflicting with the policy of the rule in question. No end of confusion, expense and loss of judicial time and effort would result. Many difficult questions would arise, such as whether a state rule of procedure embodies a non–procedural policy significant enough to override the applicable federal rule. Numerous additional appeals would result on extraneous matters, the goal of achieving a reasonably early termination of litigation would be impaired, and the federal courts would be heavily burdened.

■ In short, much of the purpose of Congress in providing for uniform rules would be defeated. It is very common today for an attorney to practice in several states, especially in cases of great importance, such as the case at bar. It was the

---

**71.** Ely, *The Irrepressible Myth of Erie*, 87 Harv. L.Rev. 693, 722 (1974).

**72.** "The most helpful way, it seems to me, of defining a substantive rule–or more particularly a substantive right, which is what the Act refers to–is as a right granted for one or more non–procedural reasons, for some purpose or purposes not having to do with the fairness or efficiency of the litigation process." *Id.* at 725. The fact that this court does not accept this conclusion in no way deprecates from the court's recognition of the significant contribution made by this seminal article to the development of the law in this complex and troublesome area, and to much of the analysis contained in this opinion. The *Ely* definition was accepted by the court in *McCollum Aviation, Inc. v. CIM Associates, Inc.*, 438 F.Supp. 245 (S.D.Fla.1977). This court respectfully disagrees with that portion of the scholarly opinion in that case, but would have reached the same result by regarding the state door–closing statute there before the court as imposing a condition precedent to suit, and not as presenting a capacity to sue problem. *Cf. Woods v. Interstate Realty*, 377 U.S. 535, 69 S.Ct. 1235, 93

L.Ed. 1524 (1949). *See* discussion in text accompanying note 87, *infra.*

**73.** *See* note 66, *supra.* The non–procedural purpose behind the rule is one of repose, to let the party opposing the deceased party know within the time specified whether the action will be continued. *See* Ely, *supra* note 71 at 730–31. The Kentucky court typically follows a policy of exacting strict compliance with many procedural requirements. *See Foremost Ins. Co. v. Shepard*, Ky., 588 S.W.2d 468 (1979).

**74.** 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941).

**75.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), *see* discussion, at p. 1116, *supra.* The commentator admits this, but states that *Sibbach* was "blundered." *See* Ely, *supra*, note 71 at 733.

**76.** "One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules." *Lumbermen's Mutual Cas. Co. v. Wright*, 322 F.2d 759, 764 (5th Cir. 1963), quoted with approval, *Hanna v. Plumer*, 380 U.S. at 472, 85 S.Ct. at 1145.

intention of Congress in providing for the adoption of uniform rules of procedure and evidence to facilitate such interstate practice. Further, the "substantive policy" approach was specifically rejected in *Sibbach v. Wilson & Co., Inc.*,[77] where the Supreme Court expressly disapproved the argument of a personal injury plaintiff that her right of privacy as protected by state law would be infringed by the requirement of undergoing a physical examination pursuant to F.R.Civ.P. 35.[78] The impracticability of the eminent commentator's proposed test is further illustrated by the consideration that a federal provision, such as F.R.Civ.P. 35's physical examination or the substitution time limit in the case at bar, would be valid in some states, but not in others, depending on whether the state's reasons for enacting a contrary rule on the same subject were substantive or procedural.[79]

Rather, this court holds that the Enabling Act was intended to provide for the establishment of uniform, certain and readily ascertainable modes of practice in the federal courts. The achievement of this goal requires that, as the terms are used in the Enabling Act, a substantive rule be defined as one which, if all the facts were stipulated, would be meaningful in analyzing the rights and liabilities of parties to a dispute if they were to settle it on the day of filing suit, taking into account the necessity of filing suit, but without actually filing it.[80] If a rule does not fit this definition, it is procedural.

**77.** 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), *see* discussion, *supra*, at p. 1113.

**78.** It is true that *Miller v. Davis*, 507 F.2d 308 (6th Cir. 1974) adopted an interest analysis or balancing approach to some *Erie* problems. *See* Leathers, *Miller v. Davis: The Sixth Circuit Applies Interest Analysis to an Erie Problem*, 63 Ky.L.J. 923 (1975). However, there was no direct conflict between a state and federal rule in *Miller*. It was a Rules of Decision Act case, and the Enabling Act was not involved. What was involved was a decision of Kentucky's highest court, which held that a state court could not hear a case concerning the administration of a foreign trust. The state decision had the same effect as a "door–closing" statute. *See* Leathers, *supra* at 933. The Sixth Circuit Court of Appeals held in *Miller* that the state decision need not be followed because of countervailing federal considerations. This approach may no longer be valid under the recent decision of the Supreme Court of the United States in *Walker v. Armco Steel Corp.*, ––– U.S. ––––, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), which stated that *Erie* analysis only begins when a state and federal rule are in direct collision and that if there is no " 'Federal Rule which cover[s] the point in dispute, *Erie* command[s] the enforcement of state law.' " Slip opinion at p. 9, quoting *Hanna v. Plumer*, 380 U.S. at 470, 85 S.Ct. at 1143. Compare the approach of the original *Erie* opinion on this point. *See* note 25, *supra*. *Walker* discussed the policies behind the state statute involved in it, but much of the analysis was only in the context of determining whether there was a conflict with a Federal Rule of Civil Procedure. But at another point, the Court said that in the absence of an applicable federal rule, "the policies behind *Erie* and *Ragan*," controlled the issue, and that failure to apply the state rule would result in inequitable administration of the law, one of the evils sought to be prevented by the policies of *Erie*.

The question *Walker* leaves open is whether a countervailing federal consideration, if it had found one to exist, could have overcome this *Erie* policy. For a further discussion of a proposed balancing approach in Rules of Decision Act cases, *See* Redish and Phillips, Erie *and the Rules of Decision Act: In Search of the Appropriate Dilemma*, 91 Harv.L.Rev. 356 (1977). *See* Ely, *supra*, note 71 at 714–17, for advocacy of a "rejuvenated·outcome determination test" in Rules of Decision Act cases. Some other examples of balancing or interest analysis in Rules of Decision Act cases are: *Edelson v. Soricelli*, 610 F.2d 131 (4th Cir. 1965); *Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I.1978). The balancing approach in Rules of Decision Act cases is subject to the criticism that it violates the mandate of that Act that state law be applied in diversity cases if there is no applicable federal law. *See* Yale note, *infra* note 80 at 696–97, n.88. It is not clear whether *Walker* did not "balance" because it rejected the interest analysis approach or because it found no countervailing federal policy to place in the scale. Whether or not balancing is appropriate where there is no explicit federal rule or statute and the determination is to be made under the Rules of Decision Act, *Walker* makes clear that it is not to be used in cases like the case at bar, where a federal rule is applicable. In such cases the tripartite test of *Walker* and *Hanna* provides the sole criteria.

**79.** *See* Ely, *supra* note 71, at 714 and 722.

**80.** *Cf.* Note, *The Law Applied in Diversity Cases; The Rules of Decision Act and the Erie Doctrine*, 85 Yale L.J. 678, 695 ff. (1976).

This is a reformulation in a manner meaningful to the trial judge or attorney of the concept of substantive law as that which regulates primary activity, as suggested by Mr. Justice Harlan,[81] and that which defines the rights and duties *which procedure is designed* to enforce, as prescribed by *Sibbach v. Wilson, Inc.*[82]

The key to this reformulation is the concept of all "facts," being stipulated. "Facts," as used here, includes not only operative facts out of which the claim for relief arose but such other pertinent "facts" as, for example, that the statute of limitations has run, or that some condition precedent to filing suit has not been met. Since most rules of "procedure" are directed toward ascertaining facts, the parties to a dispute, when meeting (in a figurative sense) on the courthouse steps to settle it, would need to use only "substantive" rules (those governing primary activity) in analyzing their rights and liabilities if all facts were stipulated. Similarly, rules of pleading, evidence, discovery, etc., (procedure) would not be considered by them. If the parties settle, taking the necessity of filing suit into consideration, but without actually filing it,[83] factors which would be a bar to filing suit, such as whether the state statute of limitations has run, or the necessity of posting a bond for costs enter into their evaluation, but matters incidental to a law-

suit, such as the assessment of costs, the manner of serving process, or a possible problem with the time limit for effecting a substitution of parties, do not.

■ It must be reiterated that because an issue may be classified as "procedural" within the meaning of the Enabling Act, does not necessarily mean a federal rule would be employed to decide it. As the recent decision in *Walker v. Armco, Inc.*, makes clear, federal policy is strictly controlling only if it has been embodied in one of the Federal Rules of Civil Procedure,[84] or some other explicit federal law. For instance, burden of proof would meet the above test of being procedural, but state law on the subject controls, because it is not addressed by one of the Federal Rules of Civil Procedure.[85]

■ The test prescribed herein requires that the F.R.Civ.P. 25(a) be classified as procedural under the Enabling Act and that the substitution of parties be permitted herein, despite the contrary provisions of state law. This is true because immediately prior to filing the suit the parties would not consider this rule in evaluating their rights and liabilities.

The test is consistent with the Supreme Court's state–federal choice of law diversity cases and the better–reasoned lower court decisions. A statute of limitations[86] is sub-

81. Mr. Justice Harlan adduced the proposition that a substantive rule was one which had "a substantial impact on private primary activity." *Hanna v. Plumer*, 380 U.S. 460, 477, 85 S.Ct. at 1147 (1965) (concurring opinion.)

82. The problem with applying Mr. Justice Harlan's test in actual practice is that it is stated subjectively. There are some sophisticated people who do take rules of procedure into account in deciding whether or not to follow a particular course of conduct. *See Yale* note, *supra* note 80. The *Sibbach* test, as worded, leaves a number of gray areas, because it is circular, defining procedure as a means of protecting substantive rights, without providing a test for the latter.

83. The effect of this aspect of the test is well illustrated by *Johnson Chemical Co. v. Condado Center, Inc.*, 453 F.2d 1044 (1st Cir. 1972), holding that a state statute requiring posting of a bond for costs would be enforced, but the time for posting the bond was subject to exten-

sion under F.R.Civ.P. 6. If the necessity of posting a bond for costs is taken into account, the fact that the amount of such bond might be prohibitive affects the settlement value of the suit.

84. The Federal Rules of Evidence were not passed pursuant to the Enabling Act, and are not limited by the substance–procedure distinction. *See* note 102, *infra*. The applicability of state law, where no federal rule or statute is expressly applicable, may or may not be subject to the interest analysis approach where there are countervailing federal considerations. See note 78, *supra*.

85. *See Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

86. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1949). There are two kinds of statute of limitations problems in

stantive because, under the test the determination is made without filing suit but taking into account the necessity of filing it. Thus, whether or not the limitations period had expired would enter into the settling parties' evaluation. The same result would be reached if a door–closing statute [87] were involved or a rule requiring pre–suit submission to arbitration.[88] Rules such as those which govern pleading,[89] service of process,[90] discovery,[91] mode of trial,[92] summary judgments, the form of injunctions [93] and judgments, etc.,[94] are procedural under the test, because if it is assumed that all facts are stipulated and suit is never filed, as the test requires, these rules

would be irrelevant to the analysis of the rights and liabilities of the parties for settlement purposes.[95]

## CONSTITUTIONAL ANALYSIS

 Turning to the third level of analysis mandated by *Walker v. Armco Steel Corp.*,[96] this court must decide whether F.R. Civ.P. 25(a) is constitutional. Here, also, the answer must be yes.[97] It seems to this court that, once it has been determined that the Rule is within the Enabling Act, it must almost of necessity be determined to be constitutional, because the grant made by Article III of the Constitution and the Nec-

this context. The first is the simple problem of whether the action is time barred under state law when suit is filed in (or removed to) the federal court. *See Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160 (3d Cir. 1976). This matter is substantive under the Enabling Act if the test prescribed here is applicable, and state law controls. The second problem is more complex, *i. e.*, what constitutes the bringing of the action for statute of limitations purposes. Some states require issuance or service of process within the limitations period, to commence an action. State law is controlling here because there is no applicable Federal Rule. *Walker v. Armco*, -- U.S. ----, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). This issue would be procedural under the Enabling Act pursuant to the test prescribed herein, because the parties would not consider it in attempting to settle at the time of filing suit. Thus, if a federal rule on the point were enacted, it would be valid under the Enabling Act.

**87.** *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

**88.** *See Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979). (Compliance with state malpractice act is condition precedent for filing suit); *Flotemersch v. Bedford County General Hospital*, 69 F.R.D. 556 (E.D.Tenn.1975). *But cf. Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I. 1978). The latter three cases are concerned with medical malpractice panels. The result of the last case was clearly correct in that the panel provided for by state law was an adjunct of the state court and functioned as a matter of state court procedure. It is submitted that in refusing to apply state law and require submission of the case to a panel, the court would have been on firmer ground to have proceeded on the basis of a conflict with the Federal Rules or the Seventh Amendment, rather than to

adopt a balancing approach. *See* note 78, *supra.*

**89.** *See Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir. 1980) (relation back of amendment substituting plaintiff is procedural under Enabling Act and prevails over contrary state rule.)

**90.** *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**91.** *See Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941).

**92.** *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). *See* discussion *supra* at p. 1115–1116. This case could have been decided on the basis that in a federal court whether trial is to court or jury is governed by the Seventh Amendment and F.R.Civ.P. 38(a).

**93.** As opposed to whether injunctive relief is appropriate, which would be substantive.

**94.** Thus, the requirement of posting a supersedeas bond is procedural. *Markowits & Co. v. Toledo Metropolitan Housing Authority*, 74 F.R.D. 550 (N.D.Ohio 1977). Burden of proof was held to be procedural within the meaning of the bankruptcy enabling statute. *In the Matter of Decker*, 595 F.2d 185 (3d Cir. 1979).

**95.** *Cf.* Yale note, *supra* note 80, at 695ff. Burden of proof is also procedural, but is not within the provisions of a Federal Rule or statute and so controlled by state law. *Cf. Cities Service Co. v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939). *Matter of Decker*, 595 F.2d 185 (3d Cir. 1979).

**96.** ---- U.S. ----, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

**97.** *Cf. Iovino v. Waterson*, 274 F.2d at 46ff.

essary and Proper Clause is broader than the Enabling Act.[98] The black letter of the Constitution makes no substance–procedure distinction.[99] In exercising the constitutional grant of power, Congress has, in general, chosen through the Rules of Decision Act and the Enabling Act, to exercise only power to enact rules of procedure, while leaving substantive matters to the states.

As has been pointed out above, the decision of the Court in *Erie Railroad Co. v. Tompkins* did not set forth any well–defined substance–procedure distinction, as has been widely assumed.[100] Rather, its holding was that the power of Congress to set up a federal court system did not include the right to provide rules for deciding a case brought in that system.

Although Congress has, until recently, chosen to enact laws for the operation of the federal courts in diversity cases which would only fall on the procedural side of the substance–procedure border, its power is not limited by that distinction. The exact limits of this power have never been tested, because of the voluntary restraint shown by Congress in exercising its constitutional powers only within the limits it established for itself in the Rules of Decision Act [101] and the Enabling Act, which generally have been interpreted to follow a substance–procedure dichotomy.[102] They may well be tested in the future, however, because the Federal Rules of Evidence were not enacted under the Enabling Act,[103] and many of them might lead to a different result in a

**98.** *See* Ely, *supra* note 71 at 698. Nevertheless, a hypothetical rule which would be procedural under the Enabling Act, but unconstitutional as an unwarranted infringement of states' rights may be envisioned. Suppose, for example, that a Federal Rule of Civil Procedure were enacted which would prohibit relation back of amendments adding new parties under Rule 15(c) in medical malpractice cases. As a rule relating to the amendment of pleadings, such rule would be procedural under the Enabling Act. But the discouragement of a particular type of claim for policy reasons would not be a necessary and proper exercise of the power to establish and operate a national court system.

**99.** U.S. Constitution Article III reads: "The judicial power of the United States shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Article I, § 8 reads: "The Congress shall have Power . . . To constitute Tribunals inferior to the Supreme Court; . . . To make All Laws which shall be necessary and proper for carrying into Execution the foregoing Powers . . . .."

**100.** "In writing for the *Erie* court, Justice Brandeis did not assert that state law was applicable only to issues of substantive law. Indeed, he declared that the law to be applied *in any case* not governed by the United States Constitution or federal law *is the law of the state.* Nevertheless, the *Erie* majority's reference to congressional inability 'to declare substantive rules of common law' for states, and the reminder of Justice Reed's concurring opinion of federal power over procedure, prompted the widely held view that, according to *Erie*, state law in diversity cases would be applied only to substantive, as opposed to procedural, issues."

Thomas, *supra* note 25, at 8. *See also*, Ely, *supra* note 70 at 708-09.

**101.** A good argument can be made that the Rules of Decision Act was meant to apply both to rules of substance and procedure. *See* Yale note, *supra* note 80 at 679.

**102.** *Cf.* Ely, *supra* note 71, at 706 n.77, 718–19. *But see*, Yale note, *supra* note 80, at 704–5, which suggests a substance–procedural test similar to that of this opinion for both the Enabling Act ·and constitutional determinations. The Yale note in this court's opinion takes too narrow a view of the constitutional power to provide for a national court system.

**103.** The Federal Rules of Evidence were adopted in a laborious process involving the Supreme Court and Congress in their formulation and culminating in Congressional enactment by statute. In 1965 Chief Justice Warren appointed an advisory committee to draw up a set of federal rules of evidence. After two preliminary drafts were circulated, 46 F.R.D. 161 (1969) and 51 F.R.D. 315 (1971) the Supreme Court reported to Congress a set of rules to take effect in 1973, 56 F.R.D. 183 (1973). Prior to the rules' taking effect Congress adopted a statute providing that the rules must be expressly approved by Congress. Act of March 30, 1973, Pub.L. 93–12, 87 Stat. 9. Congressional concern over the rules centered around the proposed rules of privilege and in particular the relation between the rules of privilege and the substance–procedure dichotomy. S.Rep. 93–1277, 93d Cong. 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, p. 7051. After significant changes in the draft approved by the Supreme Court, Congress enacted a statute adopting the Federal Rules of Evidence effec-

given case than would obtain if the action were in a state court, and also touch on matters within the ambit of legitimate state policy.[104]

## SUMMARY

The rulings of the court herein may be summarized as follows:

1. K.R.S. 395.278 and F.R.Civ.P. 25(a) are in direct conflict with respect to the time allowed to effect a substitution for a deceased party.

2. Since there is such a direct collision, it must be determined whether Rule 25(a) is procedural, rather than substantive within the meaning of the Enabling Act, and if it is procedural, if it is constitutional.

3. As the terms are used in the Enabling Act, a substantive rule is one which, if all the facts were stipulated, would be meaningful in analyzing the rights and liabilities of parties to a dispute, if they were to settle it on the day of filing suit, taking into account the necessity of filing suit, but without actually filing it. A rule that does not fit this definition is procedural under the Enabling Act.

4. Under the above test F.R.Civ.P. 25(a), as herein applied, is procedural and does not abridge substantive rights within the meaning of the Enabling Act.

5. A Federal Rule of Civil Procedure, which is procedural within the meaning of the Enabling Act, is constitutional if it is an appropriate exercise of Congress' power to provide for a national court system, under Article III and Article I, § 8 of the Constitution of the United States.

6. Under this constitutional test, Rule 25(a), as applied herein, is constitutional.

Therefore, the motion for substitution of parties must be granted. An order to that effect has previously been entered.

tive July 1, 1975. Since the rules were finally adopted by Act of Congress rather than by the Supreme Court the rules do not come under the Enabling Act with its substance–procedure distinction. *See* Saltzburg & Redden, *Federal Rules of Evidence Manual* 5 (2d ed. 1977); Wright, *Federal Courts* § 93 (3d ed. 1976).

104. In this court's view (although the matter is not presented here) the proper test of the validity of the Federal Rules of Evidence is not whether they impinge on substance, since this limitation is found only in the Enabling Act, but whether these uniform rules are necessary and proper for the operation of a national system of federal courts under the broad test of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). *See* text at note 65, *supra*. Under the substance–procedure test prescribed by this opinion for use under the Enabling Act, the rules of evidence would be procedural. But under Professor Ely's test, or an outcome or an interest analysis test, many of the Federal Rules of Evidence would be substantive. If any of these latter kinds of tests are used for the constitutionality of the Federal Rules of Evidence, courts and attorneys will have to research the state law comparable to each Federal Rule of Evidence to see if there is an impor-

tant state policy underlying the comparable state rule, as there well may be. Therefore, this court believes that their constitutionality should be determined solely under the test of the Necessary and Proper clause, *i. e.*, are they plainly adapted to the end of operating a national court system. That they must be deemed so "necessary and proper" becomes apparent if one to visualize a trial judge's trying to conduct at a bench conference an "interest analysis" of the federal approach, for example, to the problem of implied assertions under the hearsay rule. *See United States v. Zenni*, 492 F.Supp. 464 (E.D.Ky.1980). Evidence problems have a nasty habit of arising on short notice. Definite and readily ascertainable rules are a must. It would be better to have no federal rules of evidence than to have to undertake an outcome or interest analysis every time an objection is made in a diversity case. For an example of the complexity and other difficulties involved in an interest analysis approach, *See Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965), where the court had considerable difficulty in determining what the state's policy behind the rule at issue was.